**Donald S. PRITT, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF WEST VIRGINIA, INC., Defendant.**

**Civ. A. No. 2:87–1490.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 26, 1988.

Rudolph L. DiTrapano and Joshua I. Barrett, DiTrapano & Jackson, Charleston, W.Va., for plaintiff.

Donald L. Darling, Richard W. Adkins and Faye L. Knapp, Charleston, W.Va., for defendant.

MEMORANDUM OPINION
AND ORDER

HADEN, Chief Judge.

Pending before the Court are the following motions: (1) Plaintiff's motion to remand the proceedings to the Circuit Court of Kanawha County, West Virginia; (2) Defendant's motion for partial summary judgment; and (3) Defendant's second motion for partial summary judgment. The parties have submitted memoranda in support of each of their motions. The Court, however, concludes that no federal question exists in this action. Therefore, this Memorandum Opinion and Order will address only the jurisdictional issues raised by Plaintiff's motion to remand.

## I. *Background*

This action arises out of a contractual relationship between the Plaintiff, Dr. Donald S. Pritt, and the Defendant, Blue Cross and Blue Shield of West Virginia, Inc. The contract provided that Plaintiff would provide medical services to individuals holding policies of health insurance with the Defendant corporation. In return, Defendant would pay Plaintiff directly for the services provided in accordance with an agreed schedule of fees. The Defendant subsequently terminated this contractual agreement with the Plaintiff.

Plaintiff filed this action in the Circuit Court of Kanawha County, West Virginia, alleging that Defendant breached the "provider" agreement by refusing to make payments for services provided to subscribers of the Defendant, by wrongfully terminating the provider agreement, and by refusing to renew a similar agreement. Plaintiff further alleged that Defendants actions constitute violations of four separate provisions of *W. Va. Code*, § 33–11–4.

Among the "unfair trade practice" allegations, Plaintiff contends that Defendant violated *W. Va. Code*, § 33–11–4(4) which provides:

> "*Boycott, coercion and intimidation.*— No person shall enter into any agreement to commit, or by any concerted action commit, any act of boycott, coercion or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance."

Based on the nature of this alleged statutory violation, Defendant filed its petition for removal. The basis for the removal petition was that Plaintiff's claim falls within the "boycott exemption" to the McCarran–Ferguson Act, 15 U.S.C. § 1012, 1013(b), which provides:

> "(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several states which relate to the regulation or taxation of such business."

> "(b) No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such act specifically relates to the business of insurance: Provided, that after June 30, 1948, the act of July 2, 1890, as amended, known as the Sherman Act, and the act of October 15, 1914, as amended, known as the Clayton Act, and the act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by state law.

\*     \*     \*     \*     \*     \*

> (b) Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce or intimidate, or act of boycott, coercion, or intimidation."

The Defendant also contends that this Court has jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). The basis of Defendant's contention is that Plaintiff is seeking to recover payments for services provided to patients, who have received coverage from Defendant through an ERISA covered employee welfare benefit plan. Defendant thus argues that state law actions for such claims would be preempted by ERISA.

## II. *Discussion*

The threshold question for the Court to address in determining if the boycott exemption to the McCarran–Ferguson Act applies is whether the provider agreement constitutes the "business of insurance" within the meaning of 15 U.S.C. § 1012. If such contract does not amount to the "business of insurance", the provisions of the Act would be inapplicable to the present case.

The Court first notes the parties' volatility with respect to this issue. Initially Defendant argues, in opposition to the motion to remand, that the provider contract constitutes the "business of insurance." In support of this argument, Defendant proffers *W. Va. Code*, § 33–11–2, which provides that health service corporations, like the

Defendant, are deemed to be in the business of insurance for the purposes of the Unfair Trade Practices Act. Plaintiff, on the other hand, argues that not all of the activities of the Defendant corporation constitute the business of insurance; and that the McCarran–Ferguson Act only applies to the "business of insurance" and not to the business of insurance companies. Accordingly, Plaintiff argues that the provider contract fits within the latter category, and that the McCarran–Ferguson Act is not applicable.

The parties reverse sides on this issue in their arguments regarding Defendant's motion for partial summary judgment. Defendant argues that the provider contract does not constitute the business of insurance, and that the Plaintiff has failed to establish a *prima facie* case of violation of *W. Va. Code*, § 33–11–4, in that he has made no allegation that the business of insurance has been impacted by Defendant's refusal to conduct business with the Plaintiff. Plaintiff then adopts the statutory argument that Defendant is deemed to be in the business of insurance under *W. Va. Code*, § 33–11–2.

The United States Supreme Court was faced with a similar issue in *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). In *Royal Drug*, the Court was called upon to determine whether another Blue Cross organization's provider agreement with pharmacies constituted the business of insurance. The Court noted that care must be taken in distinguishing the business of insurance from the business of insurance companies. 440 U.S. at 211, 99 S.Ct. at 1073. In doing so, the Court concluded that the pharmacy agreement did not constitute the business of insurance:

"The fallacy of the petitioners' position is that they confuse the obligations of Blue Shield under its insurance policies, which insure against the risk that policyholders will be unable to pay for prescription drugs during the period of coverage, and the agreements between Blue Shield and the participating pharmacies, which serve only to minimize the costs Blue Shield incurs in fulfilling its underwriting obligations. The benefit promised to Blue Shield policyholders is that their premiums will cover the cost of prescription drugs except for a $2.00 charge for each prescription. So long as that promise is kept, policyholders are basically unconcerned with arrangements made between Blue Shield and participating pharmacies.

The pharmacy agreements thus do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by Blue Shield. By agreeing with pharmacies on the maximum prices it will pay for drugs, Blue Shield effectively reduces the total amount it must pay its policyholders. The agreements thus enable Blue Shield to minimize costs and maximize profits. Such cost savings arrangements may be sound business practice and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not 'the business of insurance.'

The pharmacy agreements are thus legally indistinguishable from countless other business arrangements that may be made by insurance companies to keep their costs low and thereby also keep low the level of premiums charged to their policyholders." *Id.* at 213–215, 99 S.Ct. at 1074–1075.

■ After considering the Court's analysis in *Royal Drug*, this Court concludes that the present provider agreement clearly cannot be characterized as the "business of insurance within the meaning of the McCarran–Ferguson Act. Therefore, the Court concludes that the boycott exemption within the Act is inapplicable. As a result, jurisdiction based upon this purported federal question is improper.

With regard to Defendant's allegation that several of Plaintiff's claims are preempted by ERISA, the critical issue for the Court to determine is whether Plaintiff qualifies as a "beneficiary" within the meaning of the Act. If Plaintiff does not meet the definition of beneficiary he would

not have standing to invoke the provisions of the Act.

The scope of coverage under ERISA and its preemptive effect extends to "any employee benefit plan if it is established or maintained by any employer engaged in commerce or in any industry affecting commerce ..." 29 U.S.C. § 1003(a); 29 U.S.C. § 1144(a).

The definition of "employee welfare benefit plan" as contained in 29 U.S.C. § 1002(1) provides:

"The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in Section 186(c) of this title (other than pensions or retirement or death, and insurance to provide such pensions)."

Examining the scope of ERISA coverage in light of the definition of "employee welfare benefit plan" illustrates that such a plan includes a program for the purpose of providing for "participants", as well as for their "beneficiaries." "Participants" and "beneficiary" are defined in 29 U.S.C. § 1002(7) and (8) as follows:

"(7) The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

(8) The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to benefit thereunder."

Neither party seriously contends that the Plaintiff is a "participant" within the meaning of the statute. Rather, defendant asserts that the definition of "beneficiary" extends to include physicians providing medical services to plan participants under an assignment of benefits theory. *Misic v. Building Service Employees' Health and Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986). In *Misic* the court held that a physician had standing to maintain an action, under ERISA, seeking reimbursement for services provided a beneficiary under an assignment of rights.

In the instant case, the Defendant contends that Plaintiff is a "beneficiary" by virtue of the provider agreement. Defendant argues that such agreement effectively assigns to Plaintiff the right to reimbursement from beneficiaries of an ERISA covered plan.

■ The Court disagrees with the Defendant's characterization and notes that the present case differs from *Misic* in that the Plaintiff does not bring this action to recover benefits assigned to him by participants or beneficiaries of an ERISA covered plan. Rather, Plaintiff alleges that Defendant breached the terms of the provider contract. This fact, coupled with the fact that the law regards provider agreements as direct purchases of services, leads the court to the conclusion that contract law should govern disputes relating to the provider agreement, and not ERISA. The Court, therefore, adopts the construction given the term "beneficiary" in *Cameron Manor, Inc. v. United Mine Workers of America*, 575 F.Supp. 1243 (W.D.Pa.1983):

" 'Beneficiary' in the context of the various provisions of ERISA carries the connotation of a person, other than the employee-participant, who is covered by the plan's provisions—e.g., a spouse or dependent. Furthermore, the act of 'designation' would appear to be such formal election as that contained in 29 U.S.C.

§ 1055, rather than the patient's choice of facility. Finally, the declared purpose of the Act is to protect and educate those persons covered by such plans, and there is no indication that Congress intended by this statute to insure that health care facilities be paid. While Plaintiff may indeed be entitled to a 'benefit' through operation of the plan—i.e., payment for services—we conclude that the term as employed in the statute does not permit a construction broad enough to include a provider of health services to participants." Citations omitted. *Id.* at 1245–1246.

### III. *Conclusion*

For the foregoing reasons, the Court concludes that no federal question exists in this action. Accordingly, Plaintiff's motion to remand is granted and Civil Action No. 2:87–1490 shall be remanded to the Circuit Court of Kanawha County, West Virginia.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.